Eastern District of Kentucky
FILED
JUN 21 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-90-JMH

JOE D. COOK                                                                         PETITIONER

VS:                **MEMORANDUM OPINION AND ORDER**

HARRY LAPPIN, ET AL.                                        RESPONDENTS

Joe D. Cook, who is presently confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), filed a *pro se* submission which he described as a civil rights action, specifically a "Complaint Pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and the Administrative Procedures Act, Title 5 U.S.C. §523 *et. seq.*" [Record No. 1]

On May 22, 2006, the Court entered an Order [Record No. 3] in which it determined that the initiating document filed herein was a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. The Court noted that relief which Petitioner Cook sought in his initial submission was an order directing the Bureau of Prisons ("BOP"): (1) to allow him to participate in the Residential Drug Abuse Program ("RDAP")[1] and (2) to release him from custody six months sooner than his scheduled release date. Thus, after analyzing the submission, the Court

---

[1] The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C.F.R. §550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. §3621(e)(2)(B).

concluded that the petitioner was essentially challenging the execution of his federal sentence, not seeking claims under *Bivens*. The Clerk was directed to recharacterize the submission as a petition for writ of habeas corpus under 28 U.S.C. §2241 [*Id.*]. [2]

By separate Order entered the same date, the Court instructed the petitioner to submit documentation verifying that he exhausted the requisite BOP administrative remedies [*See* Order, Record No. 4]. The petitioner has now paid the $5.00 habeas filing fee and has filed documentation evidencing compliance with the BOP's administrative exhaustion process [*See* Record No. 8, styled as a "Motion to Cure Deficiency"]. The petitioner has also filed a "Motion for Consideration-Clarification" [Record No. 9], in which he states that he wishes to assert claims for injunctive relief under *Bivens* against the named respondents.

This matter is now before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

---

[2] In light of the Court's construction of the submission, the petitioner was assessed only a $5.00 filing fee under §2241, as opposed to the $350.00 filing fee required for *Bivens* civil suits, which was a substantial financial savings to the petitioner.

2

## RESPONDENTS

The petitioner has named the following respondents: (1) Harry Lappin, Director of the BOP; (2) Steven Dewalt, Warden of FMC-Lexington; (3) Dr. Christian Hungness, Drug Abuse Coordinator (presumably of FMC-Lexington); (4) Tara Halbert, Unit Manager (presumably of FMC-Lexington); (5) Charles Workman, Case Manager (presumably at FMC-Lexington); and (6) FMC-Lexington.

## CLAIMS

Petitioner argues that the respondents violated his Fifth Amendment due process rights by taking action which prevented his obtaining a full one-year reduction in his sentence as required by 18 U.S.C. §3621 (e)(2)(B).

## ALLEGATIONS OF THE PETITION
### 1. Petitioner's Claims

Plaintiff states that he arrived at FMC-Lexington in July, 1999, and that in July, 2001, Dr. Redonnak Chandler, Drug Abuse Coordinator, informed him that he was eligible to participate in the RDAP. Petitioner states that every six months between July, 2001, and January, 2006, the respondents told him that he was on the RDAP waiting list. He further states as follows:

> "In addition, Respondents informed the Petitioner that they had placed a management variable on his file *to enable him from being transferred.* The Petitioner remained incarcerated at FMC-Lexington awaiting RDAP placement until January 2006."[3]

Petitioner's Motion, Record No. 9, p. 4 {emphasis added}.

---

[3] The Court is not entirely clear what the petitioner meant by using the word "enable." He seems to imply that the BOP intentionally tried to keep him from being transferred so that he could not complete the RDAP.

3

The petitioner states that his release date is August 30, 2007; that he was not allowed to begin participation in the RDAP until January, 2006; that the RDAP is a nine-month program; and that he will therefore not complete the RDAP until October, 2006. He argues that with the provision for a one-year reduction in sentence under 18 U.S.C. §3621 (e)(2), he should have received early release on August 30, 2006. He contends that given the nine-month tenure of the RDAP, the BOP should have allowed him to begin participation in the RDAP on May 30, 2005 so that he could have completed the RDAP in February 28, 2006; and thereafter have placed him in a Community Corrections Center ("CCC") for a period of 180 days. He contends that all of this activity would have taken him up to his one-year "early release date" of August 30, 2006.

The petitioner contends that the BOP is mandated by law to provide a residential substance abuse treatment for eligible prisoners under §3621(e)(1). He notes that the BOP may reward a non-violent inmate with a sentence reduction not to exceed one year. §3621 (e)(2)(B). [See Petitioner's Motion, Record No. 9, p. 4] The petitioner further asserts that under this statutory provision, the BOP has created a protected liberty interest in a reduced sentence for non-violent offenders "upon entry into the RDAP program. *See* [BOP Program Statement] P.S. 5330.10 §§6.2.3, 6.3.2, and 6.3.2(4)." [Petitioner's Motion, Record No. 9, p. 5]

Petitioner argues that the respondents violated his Fifth Amendment due process rights by taking action which prevented his obtaining a full one-year reduction in his sentence. He claims that the BOP acted unfairly in postponing his entry into the RDAP; that the BOP discriminated against him by allowing other prisoners, who had not been at FMC-Lexington as long as he had, to participate in the RDAP; and that the BOP tried to transfer him to another

4

federal facility, over his protests. He argues that his delayed entry into the RDAP (until January, 2006), has prevented him from being released a year early, on August 30, 2006.

## 2. BOP's Responses

On November 22, 2005, Warden Stephen M. Dewalt denied the petitioner's "Request for Administrative Remedy," explaining that the petitioner's participation in the RDAP had been denied in October, 2005, because the petitioner was being considered at that time for a transfer to the Federal Prison Camp ("FPC") Montgomery. Dewalt stated FPC-Montgomery had denied the transfer because of its own population management issues. Dewalt stated if the petitioner been transferred to FPC-Montgomery, he would have been able to participate in the RDAP at that facility. Dewalt further explained the status of the petitioner's situation as follows:

> If you are not transferred to another camp, a management variable will be issued so you may reside at FMC-Lexington and participate in the next RDAP beginning January 17, 2006. You remain on the waiting list for the program, and you will be selected according to your PRD. If you complete everything successfully you will graduate the program on October 20, 2006. You will then participate for six months in the Transitional Services drug treatment portion of the program while residing at the Community Corrections Center (CCC). After completion, you are provisionally eligible for approximately four months of early release. Therefore, you will likely be released during April of 2007. The Bureau of Prisons is not required by law to ensure every inmate eligible for the early release benefit receives one full year of early release. The BOP has the RDAP at FMC-Lexington in which you may participate, and you may potentially receive an early release benefit for successfully completing the program.

The petitioner then appealed Warden Dewalt's decision to the BOP's Mid-Atlantic Regional Office ("MARO"). On January 19, 2006, K. M. White, Regional Director of the MARO, issued a written response to the petitioner's appeal. Agreeing with Warden Dewalt that the BOP had acted correctly, White stated as follows:

5

> Contrary to your allegation, the Bureau of Prisons is not required by law to afford you the opportunity to earn the full 12-month sentence reduction following successful completion of treatment. Our review indicates you have sufficient time remaining on your sentence to enable you to participate in all phases of treatment and receive benefit under 18 U.S.C. §3621(e). There is no evidence to support your claim that the Bureau of Prisons discriminated against you in making any decisions concerning your redesignation or your placement in residential treatment.

Still not satisfied, the petitioner then appealed the MARO's decision to the BOP's highest level, the National Inmate Appeals. On March 17, 2006, Harrell Watts, Administrator of the National Inmate Appeals, issued a written denial of the appeal. Watts stated as follows:

> Our review reveals your projected release date is October 20, 2006, and you were placed on the RDAP waiting list on August 9, 2001. On August 25, 2005, staff submitted a request for lesser security transfer for you to FPC-Montgomery, where you could also participate in the RDAP. Since your transfer request to FPC-Montgomery was pending, you were not selected for FMC-Lexington's RDAP beginning October 11, 2005. On October 11, 2005, the Regional Director denied your transfer request due to population pressures at FPC-Montgomery and their inability to accommodate additional inmates. You were subsequently placed in the next RDAP beginning January 17, 2006, and are currently participating. There is no entitlement to an early release but it is at the Director's discretion. We do not find, nor have you provided, any evidence to support your allegation of discrimination with regard to your placement in the RDAP.

The petitioner then filed this action on April 19, 2006.

## DISCUSSION

Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

6

The general rule is that the Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976). The Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460 at 468, (1983). The Due Process Clause requires only that inmates' conditions of confinement be consistent with their sentence. *Id.* at 468. In short, prisoner classification in federal prisons is not directly subject to due process protections. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995).

As noted, the RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C.F.R. §550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. §3621(e)(2)(B). The petitioner contends that his due process rights have been violated by reason of being denied a full year's early release. The argument has no merit.

With regard to the petitioner's claim that he might have lost any opportunity for early release, there is no authority for a prisoner's having a liberty interest in 18 U.S.C. §3621(e)(2), which by its very terms grants the BOP full discretion to grant or withhold an early release, even denying any early release to those who have already completed the RDAP.[4]  Early release is

---

[4] According to Warden Dewalt, under these facts, the petitioner will still receive an early

much like parole, in that either possibility "provides no more than a mere hope that the benefit will be obtained." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. at 7; *see Green v. Federal Bureau of Prisons*, 2002 WL 32619483, *3 (D. Minn. 2002) (possibility of early release is not a liberty interest under *Sandin v. Conner*, 515 U.S. at 487).

Contrary to Petitioner Cook's arguments, there is no liberty interest in a reduced sentence, and 18 U.S.C. §3621(e)(2)(B) does not afford such an interest. In *Lopez v. Davis*, 531 U.S. 230, 121 S. Ct. 714 (2001), the Supreme Court held that the use of the word "may" rather than "shall" in §3621(e) in the statute gave the BOP the discretion to exclude categories of inmates from the sentence reduction program, and held that individualized determinations are not necessary. 531 U.S. at 240-44, 121 S.Ct. 714. Accordingly, the BOP may exclude inmates from early release categorically or on a case-by-case basis.

*Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition), involved a prisoner who had been expelled from the RDAP. Although the facts are somewhat different, *Sesi* addresses, and disposes of, the instant petitioner's Fifth Amendment due process claim.

Sesi unsuccessfully complained that his wrongful expulsion from a drug treatment program violated his due process rights. The Sixth Circuit concluded that even if an inmate *completes* the RDAP, the BOP was not required to grant him early release. *Id.* at * 2. The Sixth Circuit stated as follows:

Under 18 U.S.C. §3621(e)(2)(B), an inmate may be entitled to early release upon

---

release, in April, 2007, four months prior to his projected release date of August 30, 2006.

> successful completion of a drug treatment program. Although Sesi is not challenging his confinement, he is challenging his expulsion from the program, making him ineligible for early release. As Sesi is challenging the length of his confinement, the complaint was properly construed as a §2241 habeas petition. *See, e.g., Orr v. Hawk*, 156 F.3d 651, 652 (6th Cir.1998). A federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition. *See Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981). As Sesi has failed to exhaust his available administrative remedies, the petition was properly dismissed.
>
> Further, Sesi's contention that his termination from the drug program violated his due process rights is meritless. To support a due process claim, there must be an infringement of a protected liberty interest. *See Fristoe v. R.G. Thompson*, 144 F.3d 627, 630 (10th Cir.1998). *However, there is no liberty interest in a reduced sentence, and §3621(e)(2)(B) does not afford such an interest. Id. Therefore, Sesi's due process claim is without merit.*

*Sesi v. U.S. Bureau of Prisons*, 2000 WL 1827950, **1 (6th Cir.(Mich.)) (Emphasis Added).

There is other significant authority for this proposition. *See Hernandez v. Lindeman*, 2002 WL 31163074 (D. Minn. (September 24, 2002) (Not Reported in F. Supp.2d) (even if Hernandez had exhausted his administrative remedies concerning his ineligibility to participate in a RDAP, he could not prevail on a due process claim, because §3621(e) does not create a liberty interest cognizable under the Due Process Clause); *Egan v. Hawk*, 983 F. Supp. 858 (D. Minn. 1997) (noting that although §3621 (e)(2)(B) allows the BOP to shorten an inmate's sentence by up to one year, it does not mandate such a reduction; conditional language did not create a liberty interest, relying upon *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. at 7, and *United States v. Jackson*, 70 F.3d 874, 878 (6th Cir. 1995) (noting that the BOP has "broad authority to manage the enrollment of prisoners in drug abuse treatment programs" and finding that "it was beyond the District Court's authority to order the defendant's participation in a drug treatment program while incarcerated").

9

A liberty interest may arise only if the defendant's actions imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L. Ed.2d 418 (1995). The possible loss of a mere privilege--such as participation in a drug program--does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.

As the petitioner has not alleged any atypical and significant hardship, he has failed to allege the deprivation of a federally recognized liberty interest. Without a liberty interest, the plaintiff has no due process claim. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir.1993). The petitioner's Fifth Amendment denial of due process claim therefore fails to state a valid claim.

To the extent that the petitioner insists in his current submission [Record Nos. 8 and 9] that he fully intends to assert a claim for injunctive relief against the named respondents under *Bivens*, he is free to do so by a separate filing, as the Court has construed this action as petition for habeas relief under §2241. Given that the applicable state of the law establishes that the petitioner has not asserted a viable Fifth Amendment claim in this proceeding, the petitioner may want to seriously consider if filing a *Bivens* action would financially inure to his benefit. The law would not be different under a *Bivens* analysis.

The petitioner is further informed that even if he is granted pauper status in a *Bivens* action, he would still be required to make partial payments which would be deducted from his inmate account at FMC-Lexington and applied toward the $350.00 filing fee. Pauper status only allows a prisoner to make partial payments and avoid paying the $350.00 filing fee in advance,

10

as most litigants are required to do. It does not allow a prisoner to avoid paying a filing fee. The petitioner is duly advised.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) The petitioner's "Motion to Cure Deficiency" [Record No. 8] is **GRANTED**.

(2) The petitioner's "Motion for Consideration-Clarification" [Record No. 9] is **DENIED as MOOT**.

(3) The §2241 petition for habeas corpus [Record No. 1] is **DENIED** and this action is **DISMISSED WITH PREJUDICE**, *sua sponte,* from the docket of the Court.

(4) Judgment shall be entered contemporaneously with this memorandum opinion in favor of the respondents.

This the 21st day of June, 2006.

*Joseph M. Hood*
JOSEPH M. HOOD, CHIEF JUDGE

Date of Entry and Service: